### SMITH et al. v. HAYES.

(Supreme Court, Appellate Division, First Department. November 20, 1896.)

EVIDENCE—WEIGHT AND SUFFICIENCY.

Plaintiff claimed that defendant agreed to pay $100 and the taxable costs of a foreclosure proceeding as a fee for services. Defendant denied that he agreed to pay the taxable costs. Plaintiff's testimony was corroborated by his father and another person. A written agreement by defendant to sell to a college the house bid in by him in the proceeding was introduced, and contained the clause, "On condition that the college will pay $350, the cost of the former foreclosure." Defendant testified that he did not know "that there were certain taxed costs in a suit." The verdict was: "The jury say they find a verdict for the defendant for the foreclosure of the mortgage of $508; balance of taxable costs, $27.17; total, $535.17." *Held*, that the verdict was against the weight of the evidence.

Appeal from special term, New York county.

Action by George Putnam Smith and another against John Hayes to recover for professional services rendered to defendant by plaintiffs at attorneys and counselors at law. From an order denying a motion for a new trial, after verdict in favor of plaintiffs for a part only of their claim, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

E. C. Perkins, for appellants.
D. K. Case, for respondent.

BARRETT, J. This is an appeal by the plaintiffs from an order of the trial term denying their motion for a new trial. The action was for professional services. There were two causes of action,— one for services rendered in the vacating of certain taxes upon the property known as "54 and 56 West Fifty-Fifth Street" in the city of New York, and the other for services rendered in the foreclosing of certain mortgages upon the same property. The jury gave the plaintiffs a verdict upon the first cause of action, but decided against them upon the second. It is because of the unfavorable verdict with regard to the second cause of action that the plaintiffs appeal. The issue here was a narrow one. The plaintiffs admitted that, at the defendant's express request, they agreed, in the first instance,

to foreclose the mortgages for $100 and disbursements; that is, a fee of $50 for each house. But they claimed that the defendant also agreed to pay them the balance of the taxable costs of each cause as soon as he acquired possession of the property; that is, in case he was compelled to purchase at the foreclosure sale. As soon as the mortgagor gave up possession, they were, they say, to be paid in full. They did foreclose the mortgages, and the defendant did become the purchaser at the sale. Prior to the commencement of this action, the mortgagor had vacated both houses. The defendant denied that he agreed to pay at any time the balance of the taxable costs. He insisted that the entire agreement was to foreclose the mortgages for $100 and disbursements. And it was conceded that he had paid this $100 and those disbursements in full. The plaintiff Smith testified to the agreement as outlined above. His testimony was corroborated by two reputable witnesses (Smith's father, Isaac T. Smith, and Dr. Samson, the president of the mortgagor college), and also by a written instrument under the defendant's own hand. This instrument, apart from the corroborative witnesses, is, in our judgment, quite decisive of the case. It is an agreement, made after the defendant had purchased at the foreclosure sale, whereby he undertook to sell one of the houses in question to the Rutgers Female College. The significant part of this instrument reads as follows:

"New York, September 2d, 1893.

"I, the undersigned, agree to sell to the Rutgers Female College of New York, the house and lot No. 54 West 55th street, for the sum of thirty-five thousand five hundred dollars, on condition that the college will pay three hundred and fifty dollars, the cost of the former foreclosure."

This paper was signed by the defendant and by Dr. Samson, the president of the college. Now, there was no reason why the college should pay, in addition to the price specified in the instrument, the cost of the former foreclosure, other than the defendant's obligation therefor to the plaintiffs, and his desire to be reimbursed by the purchasers. The defendant certainly was not seeking to make money for himself out of the costs of the foreclosure. This is apparent from his own testimony, for he distinctly says that he did not even know that, as part of the foreclosure judgment, "there were certain taxed costs." Indeed, this is accentuated by the following question and answer:

"Q. Do you wish to be understood as saying that you didn't know that part of the judgment in foreclosure actions was an amount of taxed costs and disbursements which formed part of the sum for which the property must be sold, in order to clear the mortgage off from liability? A. I didn't know it; no."

Now, if he did not know that he had judgment against the college for the taxable costs, did not know in fact that these costs formed any part of the judgment, he must, in the instrument, have referred to the cost to him of the former foreclosure. But, according to his testimony, that "cost" was but $50 and disbursements. Why, then, did he not say that he would sell for $35,500 on condition that the college would pay this "cost of $50 and disbursements"? Plainly, because the plaintiffs' version of their agreement with him was the

truth, and because he knew that upon his transfer of the property this cost of $50 and disbursements would at once, under his original agreement with the plaintiffs, be swelled to $350, which was the full amount of the taxable costs.

The written agreement in question was drawn and signed at an interview (in the plaintiffs' offices) between the defendant, Dr. Samson, Isaac T. Smith, and the plaintiff Smith. The latter testified that at this interview the defendant talked of his proposed sale to Dr. Samson (for the college), and that he (Smith) replied as follows:

"I am very glad. Of course, you know, Mr. Hayes, that the agreement about the balance of those costs for the foreclosure was that we would not ask for them so long as Rutgers College stayed there. Now, a transfer, even to Dr. Samson, of one of the houses, is not a transfer to Rutgers College, and, of course, you must then pay the costs on that house. He said, 'Very well,' he would provide for that."

Both Dr. Samson and Isaac T. Smith corroborate this testimony; not, perhaps, in totidem verbis, but in substance. For instance, Isaac T. Smith says that his son was asked to give a statement of the expenses against the college due to the office; and again he says:

"The indebtedness was laid before Mr. Hayes, and he said that was so. * * * Mr. Hayes wanted all that was due from him for services in the office included, and in that way the amount of indebtedness from Hayes to the office was brought out. * * * I remember that Hayes was there, and wanted to find out how much he owed."

Dr. Samson also testified that the provision in the agreement was for the benefit of the plaintiffs. "The provision here," he says, "for me to pay $325 [he meant $350] in this agreement, that was for the man who had done his duty faithfully, Mr. Smith."

What answer does the defendant make to this seemingly conclusive array of facts; to this testimony of three witnesses, corroborated by his own written contract? Absolutely nothing. He makes no denial of the testimony, or explanation of the contract. He simply declares that he does not recall the interview. Being pressed as to whether he would say positively that no such interview took place, his only answer was, "I don't remember that there was; no." It cannot be doubted that the jury misapprehended the point and force of this testimony. The form of their verdict indicated a certain confusion of mind with regard to the question presented for their consideration. It was a sealed verdict, and it read as follows:

The jury say they find a verdict for the defendant for the foreclosure of the mortgages .................................................. $508 00
Balance of taxable costs........................................    27 17

Total ......................................................... $535 17

The peculiarity of specifying in a general verdict for the defendant the amount of the plaintiffs' claim was here enhanced by the erroneous statement of the claim itself, showing that the jury were not clear as to what the plaintiffs' demand really was. There was in fact no balance of taxable costs amounting to $27.17. The latter item was the interest upon the taxable costs from the date when the right to recovery commenced under the original agreement down to the time of the trial. The jury, however, seem to have had quite

as clear an idea on the subject generally as the learned counsel for the defendant, who insisted that he had secured a verdict for the defendant for $508, and that it could not be altered.

It is a plain case for a new trial. The order appealed from should therefore be reversed, with costs to the appellants to abide the event, and the motion for a new trial upon the second cause of action granted.

PATTERSON, J., concurs. VAN BRUNT, P. J., and WILLIAMS and O'BRIEN, JJ., concur in result.

